(No. 13692.—Judgment reversed; order of commission confirmed.)
JAMES I. SNYDER et al. Defendants in Error, vs. THE IN-
    DUSTRIAL COMMISSION et al.—(HALLIE GIERTZ, Admx.
    Plaintiff in Error.)

*Opinion filed February 15, 1921—Rehearing denied April 8, 1921.*

1. WORKMEN'S COMPENSATION—*when an award will not be set
aside for clerical error in the finding.*  Where the evidence in the
record shows jurisdiction of the parties and contains sufficient facts
to sustain the award the Industrial Commission need not make a
specific finding of all the essential facts, and an award to an ad-
ministratrix will not be set aside for a clerical error in the finding
which makes it appear that the petitioner had sustained the injury
instead of the petitioner's intestate.

2. SAME—*when an award will not be set aside though different
treatment of injury might have prevented death.*  Where there is
sufficient evidence in the record to sustain a finding of the com-
mission that an employee's death was the result of his injury, the
circuit court and the Supreme Court are not warranted in setting
aside the award because there is testimony that a different treat-
ment of the injury might have prevented death.

3. SAME—*when statutory provisions relating to action of an
employee in retarding recovery do not apply.*  The statutory pro-
visions for reducing or suspending compensation if an injured em-
ployee persists in such unsanitary practices as tend to either imperil
or retard a recovery, or refuses to submit to such medical or sur-
gical treatment as will reasonably be essential to promote his re-
covery, do not apply to an original application for compensation.

4. PRACTICE—*questions not raised below cannot be considered.*
The question of the constitutionality of the Workmen's Compen-
sation act cannot be considered by the Supreme Court unless the
question was raised in the lower court for a ruling and such rul-
ing is challenged by a proper assignment of error on the record.

WRIT OF ERROR to the Circuit Court of Logan county;
the Hon. T. M. HARRIS, Judge, presiding.

McCORMICK & MURPHY, for plaintiff in error.

HAROLD F. TRAPP, and EVAN WORTH, for defendants
in error.

Mr. JUSTICE DUNCAN delivered the opinion of the court:

On August 15, 1919, plaintiff in error, Hallie Giertz, as administratrix of the estate of Albert H. Giertz, deceased, filed her petition with the Industrial Commission for compensation under the Workmen's Compensation act against James I. Snyder and J. E. Montgomery, co-partners, and William T. Bowman, for the death of Giertz, her husband. The arbitrator awarded her as compensation $8.41 per week for a period of 416 weeks and $1.44 for one week, under paragraph (*a*) of section 7 of said act. The Industrial Commission on review sustained the award as to the defendants in error, Snyder and Montgomery, but found that Bowman was not liable to plaintiff in error. The circuit court of Logan county heard the case upon a petition for writ of *certiorari*, quashed the record and entered judgment for costs against plaintiff in error. This court granted her petition for writ of error to review the judgment.

Defendants in error, James I. Snyder and J. E. Montgomery, partners, were engaged in business as building contractors at Middletown, Illinois, and built and repaired buildings. On July 9, 1919, Albert H. Giertz, a carpenter by trade, was, and had been for two weeks prior thereto, employed by them in repairing a building upon premises owned by the wife of William T. Bowman. On that morning Giertz left his home in good health and physical condition. While at work in the basement of the house being repaired he stepped on a nail, which punctured the sole of his shoe and also his foot to the depth of about a quarter of an inch. At the noon hour of that day Giertz poured iodine on his injured foot, which had been procured for him by Snyder. Upon his arrival home that evening his wife examined his foot and found that it was red and slightly inflamed about the place where the nail had entered. Giertz bathed his foot in hot water and poured turpentine on the injured place and bandaged it with a rag.

He repeated this treatment each morning and evening thereafter until Saturday, July 12, when he went to the office of Dr. Guttery and had the wound cleansed with carbolic acid, painted with iodine and dressed with antiseptic dressing. There was no pus in it at that time. The doctor found it to be a dry wound. He advised Giertz to keep off his feet for a few days. Giertz replied that he could not very well afford to lay off, and he continued to work until the following Monday. On that morning he visited Dr. Guttery again and his wound was treated in the same manner as on Saturday. On Tuesday morning the doctor called at Giertz's home and dressed and treated the wound. On that afternoon the doctor noticed pronounced symptoms of tetanus and that evening called in Dr. Butler, of Lincoln, for consultation. At eleven o'clock that night Giertz was given anti-toxin serum subcutaneously, and this serum was thereafter administered to him at regular intervals in doses of about five thousand units until his death. He died on Thursday morning, July 17, of lockjaw, which in the opinion of Dr. Guttery was caused from the injury. The deceased left the petitioner, his widow, and two children under the age of sixteen years.

On the hearing before the arbitrator it was stipulated that the relation of employer and employee existed between the defendants in error and Giertz at the time he was injured and that demand and notice of the injury were in no way involved.

It is contended by the defendants in error that the record in this case fails to show that the Industrial Commission made a finding of the facts necessary to give it jurisdiction and to entitle plaintiff in error to the compensation awarded. It is pointed out by them that there is no finding that Giertz was in their employ July 9, 1919, or that he was working under the provisions of the Workmen's Compensation act, or that he was injured, or that he died as a result of an injury arising out of and in the course of

297—12

his employment, or that he is, in fact, dead. All of the jurisdictional facts and all of the ultimate facts necessary to entitle plaintiff in error to compensation ought to have been found by the commission, but it has never been held by this court that it is necessary for the commission to make a specific finding of all of such facts where the evidence in the record shows the jurisdiction of the parties and contains sufficient evidence to sustain the award. The findings of the commission are faulty mainly for the reason that the word "petitioner" is used by the commission in its findings instead of the name of the deceased. The recitals of the facts are therefore to the effect that the "petitioner" and the "respondent" were on the day in question operating under the provisions of the Workmen's Compensation act; that the "petitioner" sustained accidental injuries which did arise out of and in the course of the employment; and "that the actual earnings of the petitioner" were $875, etc. We do not think that the award should be set aside for the clerical errors aforesaid, or because the findings of the commission upon all questions were not made, or that such findings are not as complete as they should be, if the commission's award is sustained by the evidence in the record.

The evidence in the record, together with the stipulations, shows that the deceased, Albert H. Giertz, was employed by the defendants in error as recited in the above statement of facts; that he was injured as therein stated; that such injury arose out of and in the course of the employment, and that he died as a result of the injury. It is particularly contended by defendants in error that Giertz was not injured while engaged at his employment. The record is against this contention. It is specifically shown by the testimony of his widow, and also by the testimony of one of the employees who accompanied him to work that morning, that he was in good health before he began his work on that day. He made a statement at said build-

ing to one of his employers, Snyder, and also to a fellow-employee, that after he had begun his work he injured his foot by stepping on a nail. He showed the wound to his employer and the employee and it was treated with iodine furnished by Snyder. There was no question at any time about his receiving the injury while at work. There is absolutely no question or dispute about the fact that his foot was punctured by a nail. Every witness who saw the wound, including his wife and his physician, testified that the wound had the appearance of being made by the puncture of a nail. One of the employees, Charles Gunsten, testified that while he was working on the building between nine and ten o'clock he heard Snyder and Giertz and one or two others say in the front room of the building they were working in, that Giertz had stepped on a nail in the basement, and heard Snyder tell Giertz at that time to let him take him to the doctor to be treated for the wound. Snyder is one of the defendants in error in this case, and his statement in that particular makes it conclusive that Giertz was injured in that building while the work was going on.

Defendants in error make the further contentions (1) that the death of Giertz, under the evidence, may as well be attributed to lockjaw caused by his probing and infecting his wound with his knife as to the rusty nail that punctured his foot; (2) that his death was occasioned by his unreasonable and persistent refusal to take treatment from a physician in time to prevent lockjaw. The Industrial Commission was warranted in its conclusion that it was not infection from the deceased's knife blade that caused tetanus which finally caused his death, but that the infection was attributable to the nail which made the wound in the first instance. The testimony that Giertz used his knife on the wound was given by Dr. Guttery. His testimony on this point is that there was some slight indication that Giertz had cut around the wound with his knife, and that

the deceased had told him that he kept the wound open with the small blade of his knife. Dr. Guttery then testified that this wound could have been infected by the blade of the knife if Giertz had probed it to the bottom, but that he did not think that he did so but only scraped around the outside of the wound. It was his opinion that the knife did not cause the infection, and he refused to testify that Giertz would have recovered from his wound if he had remained absolutely quiet and refrained from working for two or three days, as he advised him to do. He simply testified that he would not like to go that far in his statements; that the chances would have been more favorable, but that Giertz already had sepsis in that foot before he came to him for treatment. It further appears from the evidence that he at no time advised or offered to treat Giertz with anti-toxin serum until the third day after Giertz had visited him for treatment, and that Giertz at no time refused, or even objected, to being treated with the serum. It also appears from the evidence that Giertz and his physician both regarded the wound from the nail as of a trifling character and that nothing serious was likely to result from it. His wife testified that he went to Dr. Guttery's office for treatment on the evening of the day he was injured, but the doctor did not remember this visit or have a notation of it.

The contentions of the defendants in error that Giertz's wound was infected by his knife blade and that his death was caused by his unreasonable refusal to take treatment on the advice of his physician are based upon the supposition, in the first place, that he probed into the wound with his knife blade, and upon the further fact that both Snyder and Dr. Bowman offered to have him treated by a physician and advised him to do so. Giertz simply replied to them that his wound did not amount to anything and that there was no use of going to a doctor; that he had had several nail punctures and they had never seriously affected him.

Several physicians, including Dr. Bowman, who was in the first place a party defendant in this suit, gave it as their opinion as experts that .if the wound was probed with the knife blade infection would be about as likely to follow as from contact with the nail. They also testified that if Giertz had received treatment from a physician within twenty-four hours after he was wounded and anti-toxin serum had been administered to him his recovery would have been almost a certainty, and Dr. Guttery agreed that such a conclusion was justifiable from his experience with that remedy. Dr. Bowman testified: "I went to Giertz [the afternoon of the day he was injured] and asked him to go with me. * * * I was prepared to take care of the injury which Giertz claimed to have received. I asked him the next morning, when I suggested treatment to him. I told him he ought to go down and have it fixed up; that it was dangerous. He said it did not amount to anything. The chances are that if he had submitted to medical treatment at my hands on Wednesday, the day he was injured, I would have suggested the administration of the anti-toxin serum, although there are some cases we don't do that. We just cauterize."

It is very strenuously argued that if the deceased had taken Dr. Bowman's advice and had gone to him for treatment the anti-toxin would have been administered and his life would have been saved. The expert testimony is based on this same supposition,—that the anti-toxin serum would have been then administered. The testimony does not warrant the conclusion that the serum would have been administered by Dr. Bowman. He never saw the wound, and his statement is merely that the chances are that he would have administered the serum. The defendants in error admit in their argument, and all of the testimony shows, that the injury was a trifling one in the opinion of all who looked at it, including Dr. Guttery. The deceased had a right to choose his own physician, and he went to his physician as soon as there was reason to con-

clude that he needed medical attention. All of the physicians testified that Giertz's treatment of himself was admirable and of the character usually given in such cases. His own physician at the time he first saw the wound did not deem it advisable to administer the serum or even suggest it. It is also the testimony of the physicians that nearly all people who receive such wounds treat them as of a trifling character and do not in the first instance seek the aid of a physician. This court cannot say from the evidence that the commission was warranted in concluding that the deceased's conclusion was unreasonable or that his death was brought about by such conduct as should prevent recovery on the part of the administratrix for his death.

The English and American authorities cited by the defendants in error are to the effect that where an employee receives an injury and the continuation of his disability is not due to the original accident but to his unreasonable refusal to take such treatment as a reasonable man would willingly take, the payment of weekly compensation should be discontinued. The treatment to which he must subject himself must be one that is unattended by serious suffering or dangerous consequences. Some of the authorities seem to go to the extent of holding that such obstinate and unreasonable refusal will bar a recovery in the first instance for the increased suffering or injury occasioned thereby. This court has held that the statutory provisions for reducing or suspending compensation if an injured employee shall persist in such unsanitary practices as tend to either imperil or retard a recovery, or shall refuse to submit to such medical or surgical treatment as will reasonably be essential to promote his recovery, do not apply to an original application for compensation. (*Joliet Motor Co.* v. *Industrial Board,* 280 Ill. 148.) In any view of the matter, the competent evidence in the record sustains the award made by the commission. The circuit court and this court

are not warranted, under the Compensation act, in reversing a finding of the commission under such a showing in the record, where there are no errors of law, as in this case, which call for a reversal.

The judgment of the circuit court is reversed and judgment entered in this court in favor of plaintiff in error confirming the award of the commission.

°*Reversed and order of commission confirmed.*

Subsequently, on petition for rehearing, the following additional opinion was filed:

Per CURIAM: On petition for a rehearing defendants in error have for the first time raised the question that the Illinois Compensation act violates the due process clause of the fourteenth amendment to the Federal constitution because it provides for judicial review only as to questions of law. It is the well settled rule of practice in this court that we will consider no questions on review that were not properly raised and presented for consideration in the lower court. It must also further appear that the ruling of the court is challenged by errors properly assigned on the record. All questions as to the validity of a statute are governed by the same rules. Defendants in error having failed to comply with these rules of procedure must be held to have waived their right to have the validity of the act considered on this petition for rehearing.

The other questions presented by the petition have been fully considered in the opinion of the court, and finding no sufficient grounds for changing our holdings in any particular the petition for rehearing is denied.

*Rehearing denied.*