Nancy Gartin and Anna Mae Arnold, Appellees, v. Gladys Elta Gartin, Individually and as Executrix of Estate of Charles Newton Gartin, Deceased, Appellants.

**Gen. No. 39,947.**

Opinion filed June 29, 1938. Rehearing denied July 12, 1938.

JOHN B. FRUCHTL, of Chicago, for appellants.

CHARLES J. TRAINOR, of Chicago, for appellees.

MR. JUSTICE HALL delivered the opinion of the court.

Gladys Elta Gartin, individually and as executrix of the estate of Charles Newton Gartin, deceased, appeals from a decree of the circuit court of Cook county, wherein the court ordered that the will of Charles Newton Gartin, deceased, executed on July 10, 1929, be revoked and held for naught, and that the order of the probate court admitting the will for probate, be vacated. The following stipulation entered into between the parties, was admitted in evidence by consent:

"That Charles Newton Gartin and the defendant herein, Gladys Elta Gartin, were married on the 8th day of August, 1915.

"That they lived together as husband and wife until on or about the 13th day of May, 1935. That no children were born in said marriage nor did said parties adopt any child or children.

"That on the 13th day of May, 1935, the said Gladys Elta Gartin filed her Bill for Divorce in the Circuit Court of Cook County against her said husband, Charles Newton Gartin, which case was numbered 35C 5795; that thereafter, to-wit, on May 14, 1936, said cause came on for trial in said Court, each side being represented by counsel; that said trial resulted in a Decree of Divorce entered on the said 14th day of May, 1936, which decree is still in full force and effect and has been in no manner modified, a copy of which decree is attached to this stipulation and made a part hereof and marked Exhibit 'A.' That following the entry of said decree, the plaintiff herein, Gladys Elta Gartin, entered into and upon possession of the personal property in the fourth paragraph of the decree specified.

"That no part of the alimony specified in the fifth and sixth paragraphs of said decree has been paid to the said Gladys Elta Gartin.

"That on June 14, 1936, the said Charles Newton Gartin died.

"That on the 10th day of July, 1929, the said Charles Newton Gartin executed a will, copy of which hereto attached and marked Exhibit 'B.'

"That on the 18th day of June, 1936, the said Gladys Elta Gartin filed her petition in the Probate Court of Cook County for letters testamentary and produced the will so executed by the said Charles Newton Gartin on the 10th day of July, 1929, which was duly admitted to probate on the 10th day of August, 1936, and the said Gladys Elta Gartin was appointed executrix of said will and is still acting in that capacity.

"That at the time of his death, the said Charles Newton Gartin was possessed of three (3) insurance policies upon his life in each of which his estate was named beneficiary and subsequent to her appointment as executrix as hereinbefore agreed, she, the said Gladys Elta Gartin, collected upon said policies, the sum of $16,377.43, which she now holds as such executrix and which she now claims as her own under the terms and conditions of said will attached hereto as Exhibit 'B'." By the will, Gartin named defendant as the sole beneficiary.

It is insisted by plaintiffs that the will was revoked by implication. Defendant contends that in Illinois, a will cannot be so revoked.

By the decree of divorce referred to in the stipulation, the court found that the defendant in the divorce suit should pay and the plaintiff should receive and take a lump sum of $1,500, in full settlement for alimony and support, to be paid in instalments of $13 every week until that sum should be paid in full, or in

the alternative that the defendant should pay plaintiff the sum of $1,200 within 30 days from the entry of the decree, together with solicitor's fees, which sums the court ordered paid, and the order recited that plaintiff should accept the sum of $1,500 in instalments, as provided, or the sum of $1,200 to be paid as ordered, in full settlement and satisfaction of any claim she might have against defendant for support and alimony, either temporary or permanent, and of any interest she may have in the personal property of the defendant.

The reasons and arguments advanced by defendant as ground for reversal seem to have been considered and passed upon adversely to her contention, in the case of *Phillippe v. Clevenger*, 239 Ill. 117. In that case, the court held that a provision of a will devising land to a daughter of the testator, is revoked, by implication, by a subsequent conveyance of the land during the testator's lifetime to the daughter, and is not revived when the testator, after such conveyance, reacquires the title to such land from the daughter, where the will was not republished in the manner provided by the statute for the execution of wills, and as a reason for its conclusion, the court said:

"The common law of England, so far as the same is applicable and of a general nature, is in force in this State with reference to the revocation and revival of wills, except in so far as it has been repealed by statute. (Rev. Stat. Chap. 28, sec. 1; *Stetson v. Stetson*, 200 Ill. 601.) It is, however, contended by Nettie F. Clevenger that the common law in regard to the revocation of wills by implication is repealed in this State by section 17 of the Wills act, (3 Starr & Cur. Stat.—2d ed.—chap. 148, p. 4044,) which reads as follows: 'No will, testament or codicil shall be revoked, otherwise than by burning, canceling, tearing

or obliterating the same, by the testator himself, or in his presence, by his direction and consent, or by some other will, testament or codicil in writing, declaring the same, signed by the testator or testatrix, in the presence of two or more witnesses, and by them attested in his or her presence; and no words spoken shall revoke or annul any will, testament or codicil in writing, executed as aforesaid, in due form of law.'

''The section of the statute referred to has been in force in this State since the enactment of the Revised Statutes of 1845, and in a number of cases decided by this court since that time wills have been held to have been revoked, in whole or in part, by the acts of the maker of the will which do not fall within the provisions of said section 17,—that is, they have been held to have been revoked by implication. (*Tyler v. Tyler*, 19 Ill. 151; *In re Tuller*, 79 id. 99; *Updike v. Tompkins*, 100 id. 406; *Duryea v. Duryea*, 85 id. 41; *American Board of Commissioners for Foreign Missions v. Nelson*, 72 id. 465.) The ground upon which the courts hold a will to be revoked by implication is, that the acts of the testator subsequent to its execution show an intention inconsistent with the will, —in other words, his acts show an intention that his will is not to be carried out as originally drawn. In the *Tyler case*, where the marriage of the testator took place subsequent to the execution of his will and where there was no child or the descendant of a child, it was held, in the absence of facts arising subsequent to the marriage which showed an intention to die testate, that the will was presumed to be revoked by the marriage. To the same effect is *Duryea v. Duryea, supra.* We think it clear, therefore, that section 17 of the Wills act only applies to the revocation of a will where there is an express intention on the part of the testator to revoke a will, and that said section

does not apply to the revocation of a will, or a part thereof, arising by implication of law from the acts of the testator which show such a change in the condition of his estate as to raise a presumption that he intended to revoke a part or the whole of his will. Section 6 of the English Statute of Frauds (8 Pickering's Stat. at Large, p. 406,) which is, in substance, the same as section 17 of the Wills act in force in this State, was in force in England at the time the rule was established in that country, that a will, or a part thereof, could be revoked by implication. We are therefore forced to the conclusion that the doctrine of the revocation of a will, or a part thereof, by implication, is not abrogated by statute in this State.'' It will thus be seen that the Supreme Court of this State has announced the doctrine that in Illinois, a will may be revoked by implication. However, no case has been called to our attention by either counsel, wherein the Supreme Court of this State has passed directly upon the question as to whether or not a decree of divorce in which all of the property rights of the parties are attempted to be fixed and determined, acts as a revocation of the will of either of the parties, where the will was made prior to the divorce. The statute on wills of the State of Michigan is similar in every respect to the Illinois statute, except that the Michigan statute, as quoted in *Lansing v. Haynes,* 95 Mich. 16, provides, in terms, ''for the revocation [of a will] implied by law from subsequent changes in the condition or circumstances of the testator. (Howard Statutes, page 5793).''

In *Lansing v. Haynes, supra,* the husband and wife were divorced and an agreement was entered into between them by which all their property rights were fixed and determined. In the agreement, no reference was made to a prior agreement to execute mutual wills made by the parties about 8 years before the divorce,

by which each party agreed to devise to the other all of his or her property. In holding that, under the circumstances, the decree of divorce acted as a revocation of the testator's will, the Supreme Court of Michigan said:

"In *Tyler v. Tyler*, 19 Ill. 151, it is held that marriage, under a statute making the wife heir to the husband, and the husband heir to the wife, revoked the husband's will made prior to the marriage, and disposing of his entire estate, without any provision for her; and this, too, though the marriage was without issue.

"By the decree of divorce in this case, the parties became as strangers to each other, and neither owed to the other any obligation or duty thereafter. There was, therefore, a complete change in these relations. . . . It is not, in my judgment, the natural presumption that, after the testator had settled with her, had conveyed to her a good share of his property, and they, by agreement, had terminated all their property, as well as their marital, relations, the will executed nearly 10 years before should remain in force, and operate upon his death as a conveyance of the remainder of his property to her, to the exclusion of his heirs. If this were so, then it would follow that, if he had children living, or a dependent mother or other dependent relatives, or a second wife without issue, his duties and obligations towards them must be set aside, in favor of a most harsh and unjust rule. The like result would follow where the husband had obtained a divorce from his wife on the ground of adultery, and she had become a common prostitute; or where the wife had obtained a divorce for a like reason, or because her husband had committed a felony, for which he was incarcerated in prison. To hold the will unrevoked under these circumstances would be repugnant to that common sense and reason upon which the law is based. I do not think the common law is so unbending as to

lead to this result. 'The reason of the law is the essence and soul of the law.'"

In the instant case, the will in question was executed more than six years prior to the divorce. The bill charges, and it is not denied, that after the divorce, Charles Gartin sought the will for the purpose of destroying it, but that he could not find it. How it came into defendant's possession is not explained. Also, it is alleged in the bill, and admitted by defendant's answer, that while the defendant here was originally named as sole beneficiary in the life insurance policies, that thereafter the beneficiary in these policies was changed by Gartin from defendant to his estate.

We are of the opinion that the court was not in error in holding that the will was revoked by implication of law, and in entering the decree from which this appeal is prosecuted. The decree of the circuit court of Cook county, is therefore, affirmed.

*Decree affirmed.*

HEBEL, P. J., and DENIS E. SULLIVAN, J., concur.